UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **TERRELL STATON,** | : | No. 3:22-cv-00856 (VLB) |
|   Plaintiff, | : | |
| | : | |
|   v. | : | |
| | : | |
| **QUIROS, et al.,** | : | |
|   Defendants. | : | December 8, 2022 |

## INITIAL REVIEW ORDER

Plaintiff, Terrell Staton, is incarcerated at Osborn Correctional Institution within the Connecticut Department of Correction ("DOC"). He has filed a civil rights complaint, pursuant to 42 U.S.C. § 1983, alleging an unconstitutional confiscation of his sweatpants. Mr. Staton also alleges violations of various Connecticut Constutiton sections. The Court concludes that Mr. Staton has not pled any plausible § 1983 claims, and, accordingly, DISMISSES the complaint.

    I.      COMPLAINT ALLEGATIONS

In May of 2021, Mr. Staton was incarcerated in a DOC facility. (Compl., Dkt. No. 1 at 4.) On the evening of May 25, 2021, Officer Hill confiscated a pair of sweatpants belonging to Mr. Staton. (*Id.* at 4–5.) Mr. Staton asked Officer Hill to return his sweatpants, but Officer Hill declined to do so. (*Id.* at 4.)

Mr. Staton now alleges his sweatpants were confiscated as retaliation for his act of filing a lawsuit against other correctional officers. (*Id.* at 5.) But, in an Inmate Request Form submission attached as an exhibit to the complaint, Mr.

Staton writes that Officer Hill confiscated his sweatpants because he disregarded repeated requests not to hang his laundry in a particular dayroom.[1]  (*Id.* at 12.)

On the morning of May 26, 2021, Mr. Staton asked Officer Jenna to return the sweatpants confiscated by Officer Hill.  (*Id.*)  But Officer Jenna declined to do so.  (*Id.* at 4.)  Later in the day, Mr. Staton asked Officer Marini to return his confiscated sweatpants.  (*Id.*)  But Officer Marini responded that he did not know where Mr. Staton's sweatpants were.  (*Id.*)  That night, Officer Hill gave Mr. Staton a receipt for the sweatpants she had confiscated the prior day.  (*Id.* at 5, 19.)

At some point in June of 2021, Mr. Staton discussed the confiscation of his sweatpants with Captain Ibes.  (*Id.* at 5, 7.)  This discussion did not result in their return.  (*Id.*)

On June 17, 2021, Mr. Staton filed an administrative grievance complaining that his sweatpants had not yet been returned.  (*Id.* at 16.)  Warden Caron denied this grievance the same day that his was filed.  (*Id.*)  On June 18, 2021, Mr. Staton filed another grievance related to the confiscation of his sweatpants.   (*Id.* at 17.) Warden Caron deemed this grievance repetitive, and, thus, rejected it.  (*Id.*)

---

[1] Though Mr. Staton provided a copy of his Inmate Request Form (Form CN 9601) and his Level 1 Grievance (Form CN9602), but he did not attach to his complaint an Inmate Level 2 Grievance (Form CN9604).   *See Inmate Administrative Remedies, Administrative Directive 9.6*, ¶ 6 ("Administrative Remedies Proecures"), Connecticut Department of Corrections, CT.Gov (effective Apr. 30, 2021), https://portal.ct.gov/-/media/DOC/Pdf/Ad/AD9/AD_0906_Effective_04302021.pdf (hereinafter, "DOC Administrative Directive 9.6").

Mr. Staton appears to allege that, as of the filing of the complaint in this case, his sweatpants still have not been returned.  (*Id.* at 7.)  Mr. Staton contends that, without his sweatpants, he is subject to "oppressive climate conditions," and suffers from "physical and emotional distress."  (*Id.* at 5.)

II.     CLAIMS

Mr. Staton sues DOC Commissioner Quiros, Warden Zylynette, Captain Ibes, Lieutenant Oullette, Officer Hill, Officer Jenna, and Officer Marini in their individual and official capacities.  (*Id.* at 1–3.)  Without explaining the nature of most claims, Mr. Staton asserts that the defendants have violated the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution and Sections 1, 3, 7, 10, and 11 of Article First of the Connecticut Constitution.  (*Id.* at 3.)  To remedy the alleged violations of his constitutional rights, Mr. Staton seeks $20 in nominal damages from each of the defendants and a total of $90,000 in punitive damages.  (*Id.* at 5.)

III.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.*; *see also Liner v. Goord*, 196 F.3d 132, 134 n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir.

3

1999) ("Section 1915A requires that a district court screen a civil complaint brough by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia*, the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555-57.  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

IV.   DISCUSSION

Section 1983 of Title 42 of the United States Code creates a private federal cause of action against any person, acting under color of state law, who deprives an individual of their federally protected rights. *See also Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). Looking to the substance of Mr. Staton's pleading, the Court construes the complaint as bringing three federal constitutional tort claims: (1) a Fourth Amendment unlawful seizure claim; (2) a due process claim related to the confiscation of property; and (3) a First Amendment retaliation claim.

A.   Official Capacity Claims

Mr. Staton brings claims against the defendants in their individual and official capacities. (Compl. at 1–3.) However, sovereign immunity principles preclude plaintiffs in a section 1983 action from suing state officials in their official capacities for an award of monetary damages. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). A plaintiff may bring section 1983 claims

against state officials in their official capacities only to the extent that they seek non-monetary, injunctive relief.  See *Will*, at 71 n.10.

Mr. Staton requests only monetary relief (nominal and punitive damages). (Compl. at 5.)  Because Mr. Staton does not request injunctive relief, his official capacity claims are dismissed.  See 28 U.S.C. § 1915A(b)(2).

B.      Personal Involvement

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation marks omitted).  And, in the context of section 1983 claims, supervisory officials are not subject *respondeat superior* liability.  *Iqbal*, 556 U.S. at 676.  Thus, "a plaintiff must plead and prove the elements of [an] underlying constitutional violation directly against the official without relying on a special test for supervisory liability."  *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Here, Mr. Staton brings claims against Commissioner Quiros and Lieutenant Oullette without mentioning either defendant in the narrative of his complaint. (Compl. at 4–5.)  The Court presumes that Mr. Staton brings claims against Commissioner Quiros on a theory of *respondeat superior*.  It is less

6

apparent why Lieutenant Oullette is named as a defendant.[2]  Regardless, Mr. Staton has not alleged that either Commissioner Quiros or Lieutenant Oullette were personally involvement in the confiscation of his sweatpants.  Accordingly, all claims against these defendants are dismissed.  See 28 U.S.C. § 1915A(b)(1).

    C.    **Fourth Amendment Unlawful Seizure Claims**

The Fourth Amendment protects against "unreasonable" governmental "searches and seizures."  U.S. Const. amend. IV.  Mr. Staton contends that the defendants violated his Fourth Amendment rights by confiscating his sweatpants.  (Compl. at 4.)  However, the Fourth Amendment is not implicated by seizures of inmate property by prison officials.  See *Hudson v. Palmer*, 468 U.S. 517, 528 n.8 (1984); see also *Baltas v. Rizvani*, No. 3: 21-cv-436 (MPS), 2022 WL 17251761, at *17 (D. Conn. Nov. 28, 2022).  Thus, Mr. Staton's Fourth Amendment claims are dismissed.  See 28 U.S.C. § 1915A(b)(1).

    D.    **Due Process Claim**

The Fourteenth Amendment forbids states from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The Court construes the complaint to claim that the defendants deprived Mr. Staton of his sweatpants (property) without due process of law.

---

[2] While Lieutenant Oullette is listed as a defendant in the captioning of the complaint, Mr. Staton does not purport to seek an award of damages from him or her.  (Compl. at 1, 5.)  This suggests that Mr. Staton may have inadvertently named Lieutenant Oullette as a defendant.

The U.S. Supreme Court has held that unauthorized deprivations of an inmate's property (whether negligent or intentional) do not offend the Fourteenth Amendment's Due Process Clause so long as a state has provided post-deprivation procedures through which an aggrieved inmate may seek an adequate remedy.  *Hudson*, 468 U.S. at 533; *see also Riddick v. Semple*, 731 Fed. App'x. 11, 13 (2d Cir. 2018).

To the extent that Mr. Staton asserts that his sweatpants were wrongfully confiscated, DOC Administrative Directives provide a general grievance procedure through which Mr. Staton could—and, in fact, did—seek remedy.  *See* DOC Administrative Directive 9.6.  And, to the extent that Mr. Staton asserts that his sweatpants have been lost or damaged, he could submit a claim for compensation to the DOC Lost Property Board.  *See* DOC Administrative Directive 9.6. § 9.  And if such a claim were denied, in whole or in part, Mr. Staton could then submit a claim for payment to the Office of the Connecticut Claims Commissioner.  *Id.*; *see also* Conn. Gen. Stat. § 4-141, *et seq*.

In sum, the state of Connecticut has enacted adequate procedures through which prisoners may seek compensation for alleged unauthorized deprivations of their property.  *See Richard v. Martin*, No. 3:20-cv-1354 (CSH), 2022 WL 5246814 at *12–13 (D. Conn. Oct. 6, 2022) (reaching same conclusion).  For this reason, Mr. Staton's due process claims are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### E. First Amendment Retaliation Claim

The First Amendment of the United States Constitution prohibits prison officials from retaliating against an inmate for his or her constitutionally protected speech or conduct. *Dolan v. Connolly,* 794 F.3d 290, 294 (2d Cir. 2015). Here, Mr. Staton alleges that the defendants confiscated his sweatpants as retaliation for his act of filing a lawsuit against other DOC officers and officials. (Compl. at 5.)

The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan,* 794 F.3d at 295. To adequately plead a retaliation claim, an inmate must plausibly allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan*, 794 F.3d at 294 (quotation marks and citation omitted).

Mr. Staton has adequately pled the first to elements of a retaliation claim. As to the first element, "the filing of a lawsuit is a constitutionally protected activity." *Baltas*, 2022 WL 17251761 at *8. And, as to the second, the Court presumes, for the purposes of initial screening, that an unauthorized confiscation of clothing could constitute adverse action. *See Richard*, 2022 WL 5246814 at *8

9

(confiscations of an inmate's religious clothing sufficiently adverse to meet the second element of a retaliation claim).

Mr. Staton has not adequately pled the final element of his retaliation claim – a causal connection between his prior lawsuit and the confiscation of his sweatpants. In the narrative of his complaint, Mr. Staton does not allege specific facts supporting an inference of retaliatory motive. (Compl. at 5.) And his conclusory assertion of retaliation is contradicted by an Inmate Request Form submission attached to the complaint as an exhibit.

On an Inmate Request Form submission dated May 25, 2021 (the very day that Mr. Staton's sweatpants were confiscated), Mr. Staton asserts that his sweatpants were confiscated because, after washing them, he hung then to dry in a dayroom. (*Id.* at 12.) Mr. Staton further admits that correctional officers had instructed him not to hang his laundry in the dayroom on four prior occasions. (*Id.*) Mr. Staton asserts that he disregarded this clear instruction because other inmates were also drying their laundry in the dayroom that day. (*Id.*)

In his Inmate Request Form submission, Mr. Staton does not assert, or suggest, that his sweatpants were confiscated as an act of retaliation for his filing of a lawsuit. (*Id.*) Nor is such a retaliatory motive alleged in the two grievance filings attached as exhibits to the complaint. (*Id.* at 16–17.) Thus, Mr. Staton's belated allegation of retaliation lacks credibility.

As previously noted, the Court must address Mr. Staton's retaliation claim with some measure of skepticism. *See Dolan,* 794 F.3d at 295. And the

complaint's conclusory allegations, coupled with its exhibits, simply do not permit for a reasonable inference that the defendants acted in retaliation. Thus, Mr. Staton's First Amendment retaliation claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### F. State Law Claims

In addition to his § 1983 claims, Mr. Staton seeks to bring claims arising from alleged violations of the Connecticut Constitution. (Compl. at 3.) But, having dismissed all of Mr. Staton's federal claims, it would be inappropriate for the Court to exercise jurisdiction over state tort claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.")

Accordingly, Mr. Staton's claims alleging violations of the Connecticut Constitution are dismissed without prejudice to his right to pursue them in state court.

### V. CONCLUSION

Mr. Staton's claims alleging violations of the Connecticut Constitution are dismissed <u>without prejudice</u> to his right to pursue them in state court. All remaining claims are dismissed <u>with prejudice</u> as the Court finds that leave to amend would be futile. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**Dated at Hartford, Connecticut this 22nd day of December, 2022.**

                                                   /s/
                                    **Vanessa L. Bryant**
                                    **United States District Judge**